IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LABORATORY CORPORATION OF AMERICA HOLDINGS and DIANON SYSTEMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> G. BERRY SCHUMANN, M.D. and SCHUMANN CYTOLOGY LABORATORIES, INC., <br><br> Defendants. | Civil Case No. _____ <br><br> **1:05CV00995** |

## COMPLAINT

Plaintiffs Laboratory Corporation of America Holdings ("LabCorp") and Dianon Systems, Inc. ("Dianon") (collectively, "Plaintiffs"), for their Complaint against Defendants G. Berry Schumann, M.D. ("Dr. Schumann") and Schumann Cytology Laboratories, Inc. ("SCL") (collectively, "Defendants"), allege as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. LabCorp is a Delaware corporation, having a principal place of business in Burlington, North Carolina.

2. Dianon is a Delaware corporation, having a principal place of business in Stratford, Connecticut.

3. Upon information and belief, Dr. Schumann is a citizen and resident of Connecticut.

4. Upon information and belief, SCL is a Connecticut corporation having a principal place of business in Trumbull, Connecticut. Dr. Schumann is the president of SCL.

RAL 317050v1

5.      The jurisdiction of this Court rests upon at least the following grounds:

    (a)    28 U.S.C. §§ 2201-02, this being an action where some of the claims arise under the Federal Declaratory Judgment Act;

    (b)    28 U.S.C. § 1331, this being a civil action arising under the Constitution, laws, or treaties of the United States;

    (c)    28 U.S.C. § 1338(a), this being a civil action arising under the trademark laws of the United States, namely, the Lanham Act, 15 U.S.C. §§ 1051-1127;

    (d)    Section 39 of the Lanham Act, 15 U.S.C. § 1121, this being an action arising under that act;

    (e)    28 U.S.C. § 1337(a), this being a civil action arising under an Act of Congress regulating commerce; and

    (f)    28 U.S.C. § 1367(a), this action including claims that are so related to claims that are within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

6.      This Court may declare the rights and other legal relations of the parties in this case under 28 U.S.C. § 2201, and Rule 57, Fed.R.Civ.P., because an actual and justiciable controversy exists concerning the rights of, and legal relations between, Plaintiffs and Defendants.

7.      There is an actual substantial controversy between Plaintiffs and Defendants of sufficient immediacy and reality to warrant the rendering of a declaratory judgment by this Court. Defendants and their actions have made a clear threat to, and placed a cloud over, Plaintiffs' business and rights.

8.      This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants have sent threatening letters and various related correspondence to LabCorp in this State and District; upon information and belief, Defendant Dr. Schumann has received payments and other benefits from Plaintiffs in this State and District; Defendants have conducted business

with LabCorp in this State and District; and Defendants otherwise have committed acts in this State and in this District that are the subjects of and/or related to the claims set forth herein. Venue is properly laid in this Court under the provisions of 28 U.S.C. § 1391.

## ACTIVITIES AND RIGHTS OF PLAINTIFFS

9. LabCorp is one of the world's largest clinical laboratories, and a pioneer in genomic testing and the commercialization of new diagnostic technologies. LabCorp operates a nationwide network of 31 primary testing locations and more than 1,100 patient service centers. Through its service network, LabCorp offers an extensive testing portfolio and leading testing technologies to the medical field.

10. Dianon, a wholly-owned subsidiary of LabCorp, provides anatomic pathology, cytogenetic, and molecular genetic services for essentially all types of cancer, as well as for many inherited and acquired genetic diseases. Dianon was acquired by LabCorp on or about January 17, 2003.

11. At least as early as 1992, Dianon selected and adopted the designation MICROCYTE. As shown in the exemplar attached hereto at Exhibit A, since at least as early as August 19, 1993, Dianon has used continuously the designation MICROCYTE in connection with, among other things, medical and diagnostic testing services and medical and diagnostic test reporting services. Further, Dianon has used continuously the MICROCYTE II and MICROCYTE PLUS marks in connection with, among other things, medical and diagnostic testing services and medical and diagnostic test reporting services since at least as early as January 5, 1996 and January, 2005, respectively.

12. As such, Dianon became the owner of common law rights, including the goodwill related thereto, in the MICROCYTE, MICROCYTE II and MICROCYTE PLUS designations

3

(collectively, "the MICROCYTE marks") as service marks under the laws of the United States and otherwise.

13. Effective January 17, 2003, subsidiary Dianon assigned to parent LabCorp, its present parent company, all right, title, and interest in and to the marks MICROCYTE, MICROCYTE II, and MICROCYTE PLUS. Dianon has been authorized by LabCorp to use the MICROCYTE, MICROCYTE II, and MICROCYTE PLUS marks.

14. Through the adoption and longstanding, prominent, and exclusive use of the designations MICROCYTE, MICROCYTE II, and MICROCYTE PLUS by Dianon and by LabCorp, these distinctive designations have acquired special and particular significance and very valuable goodwill as identifying Plaintiffs, and their business of providing, among other things, medical and diagnostic testing services and medical and diagnostic test reporting services, so that when members of the public see the marks MICROCYTE, MICROCYTE II, and MICROCYTE PLUS, they automatically think of Plaintiffs.

15. Consequently, through such usage and recognition, Plaintiffs have acquired and still possess, in addition to certain statutory rights, common-law rights in the marks MICROCYTE, MICROCYTE II, and MICROCYTE PLUS and the associated goodwill, which rights extend, without limitation, to the exclusive right to use the marks MICROCYTE, MICROCYTE II, and MICROCYTE PLUS nationwide, including in particular, in North Carolina and Connecticut.

## DEFENDANTS' ACTIVITIES AND CONDUCT

16. From approximately January 1, 1993 until approximately September 14, 2001, Dr. Schumann was employed by Dianon in Stratford, Connecticut as the medical director of

4

cytopathology and cytotechnology. Thereafter, he continued in his employment by Dianon as a staff pathologist until approximately April 4, 2005.

17.     Dr. Schumann also is the president of SCL. On or about October 12, 1993, SCL and Dianon entered into a Technical Services Agreement (the "Agreement") wherein SCL licensed to Dianon certain technical expertise, knowledge, know-how, improvements, information and data relating to testing services for microhematuria, renal, and lower urinary tract injury disorders and diseases.

18.     Prior to the execution of the Agreement, Dr. Schumann had referred to the testing service as "Cytodiagnostic Urinalysis," and urged Dianon to adopt that name for its use of the testing service. Dianon rejected this proposal, however, and instead selected the designation MICROCYTE for use in connection with the testing service that is the subject of the Agreement, in order to parallel the names of other testing services offered by Dianon which end in the letters "cyte." Dianon selected, adopted, and used the MICROCYTE mark before October 12, 1993, the date that Dianon and SCL entered into the Agreement. *See* Exhibit A.

19.     On numerous occasions, beginning at least as early as August 19, 1993, Dr. Schumann, an employee of Dianon, completed and signed Dianon's test report forms bearing the MICROCYTE mark, many of which included a statement that Dianon owns the MICROCYTE mark.

20.     On March 4, 2005, and notwithstanding Dr. Schumann's prior acknowledgment that Dianon owns the MICROCYTE marks, Defendant SCL filed an application in the U.S. Patent and Trademark Office for a service and trademark registration for the mark "MICROCYTE" in connection with medical and diagnostic testing and reporting services and instructional material and medical literature (U.S. Service Mark Application Serial No.

5

RAL 317050v1

76/632,923) ("the '923 application," attached hereto as Exhibit B). SCL's application was executed by Dr. Schumann on behalf of SCL. Further, in connection with the filing of the '923 application, and in violation of 15 U.S.C. § 1051(a)(3)(D), Defendants falsely represented to the U.S. Patent and Trademark Office that "no other person, firm, corporation, or association has the right to use the mark in commerce...." Still further, in connection with the '923 application, and further in violation of 15 U.S.C. § 1051(a)(3)(D), Defendants failed to advise the U.S. Patent and Trademark Office that Plaintiffs have "the right to use [the MICROCYTE] mark in commerce." Consequently, Defendants have committed fraud on the U.S. Patent and Trademark Office.

21. SCL filed with the U.S. Patent and Trademark Office as part of the '923 application an affidavit signed under oath by Dr. Schumann as president of SCL, stating that SCL is using the mark MICROCYTE in commerce, and has been using it in commerce since December 31, 1993 through Plaintiffs as alleged licensees.

22. On or about March 31, 2005, Defendants' counsel sent a letter to LabCorp's Chief Executive Officer in North Carolina, asserting that "SCL is the owner of the trade and service mark MICROCYTE," and that "as owner of the MICROCYTE mark, SCL has the obligation and right to monitor and control the quality of the services offered under the mark." Counsel for Defendants contended that the Agreement establishes that SCL owns the MICROCYTE mark. Further, Defendants' counsel stated that Defendants, and not Plaintiffs, "will determine whether [Plaintiffs'] test may be offered by Dianon under the MICROCYTE mark."

23. On or about April 25, 2005, counsel for Defendants sent a second letter to LabCorp's Chief Executive Officer in North Carolina, in which Defendants' counsel stated that "[t]he proper use of the MICROCYTE mark, licensed by Dianon, is of great concern to my client Dr. G. Berry Schumann and Schumann Cytology Laboratories, Inc." Counsel for Defendants

requested that Plaintiffs provide to Defendants' counsel details regarding Plaintiffs' use of the MICROCYTE mark because "[t]est procedures and quality standards not approved by Dr. Schumann may not be offered under the MICROCYTE mark."

24.     On or about July 6, 2005, counsel for Plaintiffs advised Defendants' counsel that Plaintiffs, and not Defendants, own the MICROCYTE mark, and that any claim of ownership in the MICROCYTE mark by Defendants is undercut by Dr. Schumann's use of, and signature on, Dianon's standard Microcyte test report, which provides that "MICROCYTE is a trademark of DIANON Systems, Inc."

25.     Notwithstanding that Dr. Schumann acknowledged previously that Dianon owns the MICROCYTE mark, Defendants' counsel responded on July 19, 2005, maintaining that Defendants own the MICROCYTE mark and that Defendants "are distressed that Dianon claims ownership of the MICROCYTE mark...."

26.     Upon information and belief, Defendants are in the business of providing medical and diagnostic testing and reporting services and instructional material and medical literature relating to medical and diagnostic testing and reporting services.

27.     Upon information and belief, Defendants are using the mark MICROCYTE in connection with instructional material and medical literature relating to medical and diagnostic testing and reporting services which are the same or similar to the testing and reporting service offered by Plaintiffs under the MICROCYTE marks. Upon information and belief, Defendants SCL are also claiming rights in and control over the mark MICROCYTE arising from use by Plaintiffs as alleged licensees in connection with Plaintiff's medical and diagnostic testing and reporting services. Indeed, Dr. Schumann executed an affidavit confirming SCL's use of the mark for such purposes as part of the '923 application.

28. Neither LabCorp nor its predecessor-in-interest, Dianon, have authorized Defendants to use the MICROCYTE mark or any derivative or colorable variation thereof as a trade or service mark, in connection with medical and diagnostic testing and reporting services and instructional material and medical literature relating to medical and diagnostic testing and reporting services, or otherwise.

29. The actions of Defendants were and are of a nature likely to deceive and cause confusion regarding the true source, origin, nature, characteristics, and qualities of Defendants' goods, services, and commercial activities. Additionally, the actions of Defendants were and are likely to cause confusion, mistake, and/or to deceive others regarding the affiliation, connection, or association of Defendants with Plaintiffs, with Plaintiffs' medical and diagnostic testing and reporting services, and with Plaintiffs' business and commercial activities.

30. The activities of Defendants complained of herein constitute willful and intentional infringement and violation of the rights of Plaintiffs in the MICROCYTE marks in total disregard of the proprietary rights of LabCorp, and were commenced and/or have been continued in spite of Defendants' knowledge that the use of any such proprietary designation, or any reproduction, counterfeit, derivative, or colorable imitation thereof, was and remains in direct contravention of the exclusive proprietary rights of LabCorp.

31. Defendants' unlawful activity is causing and will cause irreparable harm and injury to Plaintiffs in that, among other things, it deprives LabCorp of its absolute right to determine the manner in which its MICROCYTE marks are presented to the general public through the provision of medical and diagnostic testing and reporting services; deceives and confuses the public as to the origin and sponsorship of such services; wrongfully preys upon and cashes in on the reputation and commercial value of Plaintiffs as well as the exclusive rights in

LabCorp's proprietary designation; and irreparably harms and injures and/or threatens to harm and injure the reputation of Plaintiffs for providing quality services.

32. The acts complained of herein also have irreparably damaged and/or threaten to irreparably damage Plaintiffs by placing in the hands of Defendants the mark, reputation, and goodwill that have been developed by Plaintiffs. These acts tend to destroy the otherwise exclusive association in the eyes of the public between Plaintiffs and the MICROCYTE marks.

### Count No. 1
### (Declaratory Judgment Regarding Ownership of the MICROCYTE Marks)

33. Plaintiffs incorporate by reference all of the allegations set forth in the foregoing Paragraphs 1-32.

34. There is an actual and justiciable controversy between Plaintiffs and Defendants concerning the ownership of the MICROCYTE mark.

35. Defendants' conduct and allegations place a cloud over Plaintiffs' business activities and will cause uncertainty among customers, prospective customers, and others in the marketplace, leading Plaintiffs and/or their related companies to lose sales and business opportunities.

36. Defendants are not the owners of the MICROCYTE mark for at least the following reasons:

    (a) Dianon, and not Defendants, selected and adopted the MICROCYTE mark at least as early as 1992;

    (b) Dianon has used the MICROCYTE mark in commerce continuously since at least as early as August 19, 1993, which precedes any claim of use or ownership by Defendants;

    (c) The Agreement does not establish or acknowledge any ownership of rights of Defendants in the MICROCYTE mark, nor does it expressly or implicitly provide Defendants the right to control the quality of services offered in connection with the MICROCYTE mark;

9

(d) At least as early as August 19, 1993, and prior to the date of the Agreement, Dr. Schumann completed and signed Dianon's standard Microcyte test reports bearing the MICROCYTE mark; and

(e) Dr. Schumann has, on numerous occasions, used and signed Dianon's standard Microcyte test report, which provides that "MICROCYTE is a trademark of DIANON Systems, Inc."

37. As a direct and proximate result of Dr. Schumann's allegations against Plaintiffs, Plaintiffs are suffering irreparable injury to their reputation and goodwill in an amount that cannot presently be ascertained and cannot be compensated adequately by monetary relief alone.

38. Accordingly, Plaintiffs demand judgment declaring their ownership rights in the MICROCYTE marks, injunctive relief, and other relief as described below.

### Count No. 2
### (Lanham Act Section 43(a))

39. Plaintiffs incorporate by reference all of the allegations set forth in the foregoing Paragraphs 1-38.

40. Through their business and advertising, Defendants are and have been providing instructional material and medical literature in commerce under a trademark that is an imitation or derivative of LabCorp's distinctive MICROCYTE marks, and which tends to falsely describe and represent such goods as originating from, having been sponsored by, having been endorsed or approved by, or otherwise being connected or affiliated with, Plaintiffs. Defendants' acts of infringement are likely to confuse, mislead, and deceive members of the public as to the origin, sponsorship, or approval of Defendants' goods and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. In addition, Defendants are and have been asserting in commerce claims of ownership of and control over LabCorp's distinctive MICROCYTE marks, through use by

Plaintiffs as alleged licensees, in connection with Plaintiffs' medical and diagnostic reporting services. Such claims constitute false or misleading representations, or descriptions of fact which are likely to confuse, mislead, and deceive as to the affiliation, connection, or association of Defendants with Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42. Accordingly, Plaintiffs demand judgment against Defendants for damages, injunctive relief, and other relief as described below.

## Count No. 3
### (Infringement of Common Law Service Mark)

43. Plaintiffs incorporate by reference all of the allegations set forth in the foregoing Paragraphs 1-42.

44. The acts of Defendants complained of herein constitute infringement of the common law rights of LabCorp in its MICROCYTE marks.

45. Accordingly, Plaintiffs demand judgment against Defendants for damages, injunctive relief, and other relief as described below.

## Count No. 4
### (N.C. Gen. Stat. § 75-1.1)

46. Plaintiffs incorporate by reference all of the allegations set forth in the foregoing Paragraphs 1-45.

47. Defendants deliberately and willfully: (a) have caused and/or threaten to cause confusion or misunderstanding as to the affiliation, connection, or association of their business, goods, and services with the business and services of Plaintiffs; and (b) otherwise have engaged in conduct designed to create or cause confusion or mistake, or to deceive.

11

RAL 317050v1

48. Further, Defendants' claim of ownership in and to the MICROCYTE mark is unfair and deceptive within the meaning of N.C.G.S. §75-1.1 *et seq.*

49. Still further, by filing the '923 application containing materially false representations stating, *inter alia*, that "no other person, firm, corporation, or association has the right to use the [MICROCYTE] marks in commerce," SCL has engaged in conduct that is unfair, immoral, unethical, unscrupulous, and substantially injurious to consumers and Plaintiffs such that it constitutes an unfair and/or deceptive trade practice in violation of N.C.G.S. §§ 75-1.1 *et seq.*

50. Defendants' actions constitute unfair methods of competition in or affecting commerce and/or unfair or deceptive acts or practices in or affecting commerce in violation of N.C.G.S. §75-1.1 *et seq.*

51. Defendants' actions have caused, and will continue to cause, irreparable harm to Plaintiffs unless enjoined. Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiffs. Defendants' unlawful actions have damaged Plaintiffs in an amount presently unknown, but to be determined at trial.

52. Plaintiffs, therefore, are entitled to injunctive relief, damages, and other relief under N.C.G.S. §75-1.1 *et seq.* as described below, including treble damages under N.C.G.S. § 75-16, and attorneys' fees under N.C.G.S. § 75-16.1.

### Count No. 5
### (Cancellation of Defendants' Registration)

53. Plaintiffs incorporate by reference all of the allegations set forth in the foregoing Paragraphs 1-52.

54. In the event that Defendants' '923 application results in the issuance to Defendants by the U.S. Patent and Trademark Office of a registration for the mark "MICROCYTE," Plaintiffs will be damaged by such registration in that Defendants will have obtained such registration by fraud on the U.S. Patent and Trademark Office, Defendants are and will be using the mark in connection with goods and services identical or so closely related to Plaintiffs' services as to be likely to cause confusion and mistake or to deceive, and the prima facie evidentiary effect of such registration will tend to impact Plaintiffs' rights to use of the MICROCYTE marks.

55. Accordingly, Plaintiffs request that the Court exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel any registration resulting from Defendants' '923 application, and that the Court award Plaintiffs their damages and such other relief as described below.

### Prayer for Relief

WHEREFORE, Plaintiffs pray:

1. That the Court declare that LabCorp, and not Defendants, owns all trademark and service mark rights in and to the MICROCYTE, MICROCYTE II, and MICROCYTE PLUS marks.

2. That the Court order Defendants to expressly abandon U.S. Service Mark Application Serial No. 76/632,923.

3. That the Court preliminarily and permanently enjoin Defendants, and their agents, servants, employees, and attorneys, and any other persons or entities in active concert or participation with them, from continuing the acts complained of herein and, more particularly,

13

RAL 317050v1

that Defendants and such other persons or entities be preliminarily and permanently enjoined and restrained from:

(a) Asserting any purported trademark or service mark rights in the MICROCYTE marks against Plaintiffs or otherwise;

(b) Using or employing, or authorizing others to employ or use, directly or indirectly, in any manner, the MICROCYTE marks, or any reproduction, derivative, counterfeit, copy, or colorable imitation thereof, in connection with the promotion of goods and services for medical and diagnostic testing and reporting services, instructional material, or medical literature;

(c) Using or employing, or authorizing others to use or employ, directly or indirectly, in any manner, the MICROCYTE marks, or any reproduction, derivative, counterfeit, copy, or colorable imitation thereof, in connection with the promotion, advertising, or provision of any other goods or services;

(d) Falsely representing or causing confusion in any manner such that the public would tend to falsely associate Defendants' business, services, or products as being the same as, related to, approved by, sponsored by, affiliated with, or otherwise having any relationship with, Plaintiffs and their business, services, and products; and

(e) Unfairly competing with Plaintiffs in the manners complained of herein, passing off Defendants' goods and services as and for goods and services of or sponsored by Plaintiffs, injuring the business reputation of Plaintiffs in any manner, and falsely describing, representing, advertising, or designating the origin of Defendants' goods and services, or otherwise engaging in unfair competition or unfair or deceptive trade practices.

14

RAL 317050v1

4. That Defendants be directed to file with this Court and serve on Plaintiffs within thirty (30) days after the entry of each injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of the injunctive relief.

5. Alternatively, that the Court exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel any registration resulting from Defendants' '923 application.

6. That Defendants be required to deliver up for destruction all promotional literature, advertisements, sales aids, business cards, and other material in Defendants' possession, custody, or control relating to the use of the MICROCYTE marks, or any colorable derivatives and imitations thereof, as well as all patterns, plates, molds, matrices, and other means for reproducing, counterfeiting, copying, or otherwise imitating any of LabCorp's proprietary designations.

7. That an accounting be had and Defendants be required to disgorge to Plaintiffs the profits Defendants have unjustly earned as a result of their unlawful conduct as described herein.

8. That Defendants be required to pay Plaintiffs' actual, enhanced, and punitive damages in light of the willful and predatory nature of Defendants' actions.

9. That Plaintiffs' damages be trebled pursuant to N.C. Gen. Stat. §§ 75-1.1, *et seq.*

10. That Defendants be required to pay Plaintiffs the costs of this action and the reasonable attorneys' fees and expenses that Plaintiffs incur in connection with this action, pursuant to N.C. Gen. Stat. § 75-16.1 and 15 U.S.C. § 1117 (as this is an exceptional case), and any other applicable statute or law.

11. That Plaintiffs be granted such other, different, and additional relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiffs demand a trial by jury on all claims so triable.

This the _____ day of November, 2005.

By: _____
Cynthia L. Wittmer
N.C. State Bar No. 10098
cindywittmer@parkerpoe.com
James Thomas
N.C. State Bar No. 14333
jamesthomas@parkerpoe.com
Attorneys for Plaintiffs
Parker, Poe, Adams & Bernstein L.L.P.
150 Fayetteville Street Mall, Suite 1400
Post Office Box 389
Raleigh, North Carolina 27602-0389
Phone: (919) 828-0564
Fax:    (919) 834-4564