UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LABORATORY CORPORATION : | |
| OF AMERICA ET AL., : | |
|     Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 3:06-cv-01566 (VLB) |
| JENNIFER SCHUMANN and AARON : | |
| SCHUMANN, ADMINISTRATORS : | |
| OF THE ESTATE OF G. BERRY : | |
| SCHUMANN, ET AL., : | |
|     Defendants. : | February 4, 2009 |

MEMORANDUM OF DECISION ON CROSS MOTIONS
FOR SUMMARY JUDGMENT [Docs. #83, 87]

In this trademark and copyright dispute, the plaintiffs, Laboratory Corporation of America ("LabCorp") and Dianon Systems, Inc. ("Dianon"), filed a four-count complaint against the defendants: Jennifer Schumann and Aaron Schumann, administrators of the estate of G. Berry Schumann; and Schumann Cytology Laboratories, Inc. ("SCL"). Thereafter, the defendants filed a five-count counterclaim against the plaintiffs. The defendants now move for summary judgment as to all of the plaintiffs' claims and count five of the defendants' counterclaim. [Doc. #83] The plaintiffs move for summary judgment as to all of their claims and all of the defendants' counterclaims. [Doc. #87] For the reasons given below, the motions are GRANTED in part and DENIED in part and the remaining state law claims are DISMISSED without prejudice to refiling in state court.

# I

# Undisputed Facts

The following undisputed facts are relevant to the parties' motions for summary judgment. As to the plaintiffs, LabCorp is a Delaware corporation with a principal place of business in North Carolina, and Dianon, which is a wholly-owned subsidiary of LabCorp, is a Delaware corporation with a principal place of business in Connecticut. As to the defendants, SCL is a Connecticut corporation with a principal place of business in Connecticut, and G. Berry Schumann, the president of SCL, resided in Connecticut until his death on June 27, 2008, during the pendency of this case. On December 1, 2008, the Court granted the motion filed by Jennifer Schumann and Aaron Schumann, the administrators of the estate of G. Berry Schumann, to substitute them as defendants and counterclaim plaintiffs. [Doc. #100]

G. Berry Schumann was a medical doctor and pathologist. Around 1979, he and his wife at the time, Janet Schumann, developed a certain type of urinalysis ("Schumann urinalysis test") that he later tried to commercialize through SCL beginning in 1992. On January 1, 1993, he was hired by Dianon, which also provided laboratory space for SCL. In August or September 1993, Dianon began marketing the Schumann urinalysis test under the trademark Microcyte. Dianon sent physicians several forms of medical literature and patient test forms that included the following statement: "Microcyte is a trademark of

2

Dianon Systems, Inc." [Doc. #89, Ex. D-73]

Thereafter, on October 12, 1993, Dianon signed an agreement with SCL regarding the Schumann urinalysis test. The agreement, which was labeled a "technical service agreement," provided that Dianon would receive an exclusive license for the Schumann urinalysis test until December 31, 1998, after which Dianon would have "a paid in full non-exclusive license in perpetuity." [Doc. #84, Ex. D, p. 2] Many portions of the agreement referred to the Schumann urinalysis test by using the word Microcyte, but some portions of the agreement also called it the "testing service" or the "testing service application." [Doc. #84, Ex. D, p. 1]

G. Berry Schumann worked for Dianon continuously from 1993 to 2005 as a medical director and pathologist. During much of that time, he was responsible for overseeing Dianon's scientific and technical operations relating to the Schumann urinalysis test. On a daily basis, he reviewed patient test forms sent to Dianon by physicians who were performing the Schumann urinalysis test. Sales of the Schumann urinalysis test steadily increased from approximately $2 million in 1994 to nearly $20 million in 2006.

Dianon terminated G. Berry Schumann's employment in March 2005, shortly after SCL attempted to register the Microcyte trademark with the United States Patent and Trademark Office ("PTO"). LabCorp and Dianon opposed SCL's application and filed this action in the United States District Court for the Middle District of North Carolina. The PTO then suspended SCL's application pending the outcome of the present case, and the federal court in North Carolina

granted the defendants' motion to transfer venue to the District of Connecticut.

## II

## The Complaint, the Counterclaim, and the Pending Motions

The complaint before this Court states the following causes of action: a declaratory judgment that the plaintiffs own the Microcyte trademark (count one); trademark infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (count two); common law trademark infringement under North Carolina law (count three); and violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1 (count four).

The defendants' counterclaim not only addresses the ownership of the Microcyte trademark, but it also alleges that the plaintiffs infringed copyrights held by G. Berry Schumann in two manuals and a textbook related to the Schumann urinalysis test. The counterclaim before this Court states the following causes of action: copyright infringement in violation of 17 U.S.C. § 501 (count one); unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (count two); violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42a-110a et seq. (count three); common law unfair competition under Connecticut law (count four); and a declaratory judgment that the defendants own the Microcyte trademark (count five).

The defendants move for summary judgment as to all of the plaintiffs'

claims and count five of the defendants' counterclaim.  [Doc. #83]  The plaintiffs move for summary judgment as to all of their claims and all of the defendants' counterclaims.  [Doc. #87]

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor."  Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).  "The moving party bears the burden of showing that he or she is entitled to summary judgment."  Huminski, 396 F.3d at 69.  "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor."  Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

III

**Ownership of the Microcyte Trademark**

The Court first examines whether there is a genuine issue of material fact regarding ownership of the Microcyte trademark.  "[T]rademark rights flow from priority and that priority is acquired through use. . . .  Thus, so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market. . . .  [S]ee also Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.")."  ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 146-47 (2d Cir. 2007).

A

**The Evidence in the Record**

The evidence in the record indicates that Dianon began using the Microcyte trademark beginning in August or September 1993.  Dianon sent physicians several types of medical literature and patient test forms that included the following statement:  "Microcyte is a trademark of Dianon Systems, Inc."  [Doc. #89, Ex. D-73]  G. Berry Schumann was aware of that literature, and on a daily basis he reviewed patient test forms sent to Dianon by physicians who were

6

performing the Schumann urinalysis test. The medical literature and patient test forms constitute sufficient evidence that Dianon used the Microcyte trademark in marketing the Schumann urinalysis test both in the first instance and on a continuous basis.

The defendants have not provided any evidence that they actually used the Microcyte trademark to market the Schumann urinalysis test before Dianon did so, nor have the defendants provided any evidence of continuous use. Although the defendants argue that they were first to think of using the Microcyte trademark, that argument is inapposite. The ITC case indicates that the test of trademark ownership is use in a market, and that use must be the first and it must be continuous. Under the circumstances of the present case, a reasonable jury could not find priority or continuousness of use of the Microcyte trademark by the defendants.

B

The "Technical Service Agreement"

The defendants assert that the "technical service agreement" signed by Dianon and SCL on October 12, 1993, indicated that the defendants owned the Microcyte trademark. The defendants argue that the agreement not only licensed the Schumann urinalysis test to the plaintiffs, but that it also licensed the Microcyte trademark to the plaintiffs. The plaintiffs argue that the agreement was

limited to a license for the Schumann urinalysis test. In the plaintiffs' view, the agreement did not address the Microcyte trademark, and that lack of attention was consistent with the plaintiffs' ownership of the mark.

The Court proceeds to examine the agreement, which was expressly governed by Connecticut law. "The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the . . . construction of a contract, [the court] must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Moreover, in construing contracts, [the court] give[s] effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law . . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." **Ziotas v. Reardon Law Firm, P.C.**, 111 Conn. App. 287, 294, 959 A.2d 1013 (2008).

Examining the language of the agreement, the Court determines that it clearly and unambiguously limited itself to the licensing of the Schumann urinalysis test and failed to address any licensing of the Microcyte trademark.

The agreement was labeled "technical service agreement" and stated that "SCL desires to provide the technical knowledge and intellect to [Dianon] to perform the Microcyte . . . testing services." [Doc. #84, Ex. D, p.1] The agreement further explained that "SCL grants to [Dianon] exclusive non-transferable rights to market, sell or offer for sale the Microcyte . . . testing services . . . ." [Doc. #84, Ex. D, p. 3] The agreement specified that SCL was (1) "to facilitate the execution and performance of a consulting contract" between Dianon and Janet Schumann "for the expressed purpose of training [Dianon] in the use and performance of Microcyte . . . testing services"; (2) "to provide all technical expertise, knowledge, knowhow, and improvements of Microcyte . . . its process, reporting, interpretation and use"; and (3) "to make available . . . any discovery of information, knowledge or other data that supports the testing service application . . . ." [Doc. #84, Ex. D, p. 1] In exchange, Dianon was (1) "to market and sell the testing service (Microcyte . . .)"; (2) "to provide all marketing, and sales literature, together with physician supplies and training"; and (3) "to keep full and true books of accounts and other records . . . ." [Doc. #84, Ex. D, pp. 1-2]

No language in the agreement indicated that SCL was licensing a trademark. Although the defendants argue that the use of the word Microcyte implied a trademark license, the agreement did not use the word trademark and did not assign any trademark-related duties to either party. The agreement discussed only technical services, consistent with the label on its first page. Furthermore, the agreement did not consistently refer to the Schumann urinalysis

test by the word Microcyte, as some portions of the agreement also called it the "testing service" or the "testing service application."  [Doc. #84, Ex. D, p. 1]  In short, the plain language of the agreement did not indicate the ownership of the Microcyte trademark.  As the defendants have not demonstrated that the agreement concerned the Microcyte trademark as opposed to the technical knowledge regarding the Schumann urinalysis test, and they have not produced evidence that they used the Microcyte trademark in a market either in the first instance or on a continuous basis, the plaintiffs are entitled to a declaratory judgment of ownership of the Microcyte trademark.  The Court grants summary judgment to the plaintiffs as to count one of their complaint and count five of the defendants' counterclaim.

IV

The Plaintiffs' Claim of Trademark Infringement

The Court next examines the federal trademark infringement count of the plaintiffs' complaint (count two).  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides in relevant part:  "Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action . . . ."

As that language indicates, actual use in commerce must be shown in order for the plaintiffs to prevail on their federal trademark infringement count. However, the evidence in the record falls short of that requirement. The defendants attempted to register the Microcyte trademark in 2005, but they did not actually market the Schumann urinalysis test under the Microcyte trademark. The plaintiffs concede that SCL "has not performed the [Schumann urinalysis] test since 1993, has not performed any services since 2001 and . . . is dormant." [Doc. #88, p. 21] Accordingly, the defendants are entitled to summary judgment as to count two of the plaintiffs' complaint. The Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims of trademark infringement and unfair trade practices (counts three and four) and dismisses them without prejudice to refiling in state court.

V

The Defendants' Copyright Counterclaim

The Court now turns to the defendants' counterclaim, which alleges that

the plaintiffs infringed copyrights held by G. Berry Schumann in two manuals and a textbook related to the Schumann urinalysis test.  The defendants claim that the plaintiffs copied from the manuals and textbook in order to produce an updated manual without G. Berry Schumann's consent.  The updated manual, which credited G. Berry Schumann as a contributor, was intended for use only by the plaintiffs' employees, and no more than 50 copies were made.  The plaintiffs' employees used the updated manual while G. Berry Schumann worked at Dianon.  The plaintiffs point out that G. Berry Schumann participated in the creation of the allegedly infringing updated manual by providing editorial assistance to the plaintiffs on two separate occasions and that he did not object to the updating of his manual.  The defendants argue that G. Berry Schumann did not give the plaintiffs permission to create the updated manual and that he believed his editorial assistance involved materials for an oral presentation, not an updated manual.

      The plaintiffs move for summary judgment on the copyright infringement counterclaim (count one) on the ground of equitable estoppel.  "Equitable estoppel is properly invoked where the enforcement of rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. . . .  [S]ee 4 Nimmer on Copyright § 13.07 (noting that equitable estoppel applies in copyright infringement actions, and may deprive a plaintiff of an otherwise meritorious copyright infringement claim). . . . A copyright defendant invoking equitable estoppel must show that:  1) the

**12**

plaintiff had knowledge of defendant's infringing acts, 2) the plaintiff either intended that defendant rely on his acts or omissions or acted or failed to act in such a manner that defendant had a right to believe that it was intended to rely on plaintiff's conduct, 3) the defendant was ignorant of the true facts, and 4) the defendant relied on plaintiff's conduct to its detriment." Dallal v. New York Times Co., Docket No. 05-2924, 2006 WL 463386 (2d Cir. Feb. 17, 2006).

The undisputed evidence in the record shows that on two separate occasions, G. Berry Schumann marked up many pages of the manual from which the updated manual was produced. The marked up pages included tables of contents for several chapters, and G. Berry Schumann noted several misspellings and formatting errors throughout the manual. [Doc. #89, Ex. D-8] He also noted that the copy he was editing needed a title page; lists of authors, sources, and references; and an indication of copyright. [Doc. #89, Ex. D-9] Dianon employees used the updated manual while G. Berry Schumann worked there, and he did not object to it at that time. In light of all the evidence, the Court determines that a reasonable jury could not find that G. Berry Schumann failed to understand that he was editing his manual in order to update it rather than to prepare an oral presentation.

Pursuant to the test in Dallal, therefore, the Court concludes that G. Berry Schumann had knowledge of the plaintiffs' update to his manual and that he acted in such a manner that the plaintiffs had a right to believe that he intended for the plaintiffs to update his manual. Because G. Berry Schumann did not

object to the updating of his manual, the plaintiffs had no reason to know that he would later oppose the updating, and the plaintiffs accordingly relied on his conduct to their detriment.  Furthermore, the "technical service agreement" of October 12, 1993, granted the plaintiffs a perpetual non-exclusive license for the Schumann urinalysis test and required the defendants to facilitate Janet Schumann's consulting contract regarding training Dianon in the use and performance of the Schumann urinalysis test.  The plaintiffs' conduct in updating G. Berry Schumann's manual was consistent with the "technical service agreement."  Accordingly, the plaintiffs are entitled to summary judgment as to count one of the defendants' counterclaim.

      The defendants' Lanham Act counterclaim (count two) suffers from the same problem as the plaintiffs' Lanham Act claim because the defendants have failed to show that the plaintiffs actually used the updated manual in commerce. The plaintiffs produced no more than 50 copies of the updated manual for their employees and did not sell or distribute it.  The defendants argue that one copy of the updated manual was acquired by one of the plaintiffs' competitors in 2005, but however that copy was acquired, it is undisputed that the plaintiffs did not update the manual for the purpose of sale or distribution.  The plaintiffs are therefore entitled to summary judgment as to count two of the defendants' counterclaim.  The Court declines to exercise supplemental jurisdiction over the defendants' state law counterclaims of unfair trade practices and unfair competition (counts three and four) and dismisses them without prejudice to

refiling in state court.

## VI

## Conclusion

The plaintiffs' motion for summary judgment [Doc. #87] is GRANTED as to count one of their complaint and counts one, two, and five of the defendants' counterclaim.  The defendants' motion for summary judgment [Doc. #83] is GRANTED as to count two of the plaintiffs' complaint and DENIED as to count five of the defendants' counterclaim.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the parties' remaining state law claims and DISMISSES them without prejudice to refiling in state court.  The Clerk is directed to enter judgment in accordance with this opinion and to CLOSE this case.

          IT IS SO ORDERED.

          _____/s/_____
          Vanessa L. Bryant
          United States District Judge

Dated at Hartford, Connecticut:  February 4, 2009.